White, J.
 

 delivered the following opinion of the Court: The bill charges that Doublehead, a Cherokee Indian, represented that by virtue of a' treaty between the United States and the Cherokees, he owned in fee simple a certain tract of land; that the complainant, believing the representation, agreed to take a lease on a part of it for the term of ninety-nine years; and that to secure the payment he executed his bond to Doublehead and John D. Chisolm, for six hundred and sixty-six dollars, payable two thirds in property and one third in cash at a future day. That shortly afterwards Doublehead died, when the complainant discovered that he had only a life estate in the land, and also that the same tract had been before the grant to Doublehead granted by the. State of Georgia to Zachariah Cox & Co.; that the defendant received an assignment on the bond after it became due, and with a full knowledge of the failure of the consideration, and that he had brought a suit and recovered a judgment.
 

 The answer of the defendant states that the bond was assigned to him after it became due; that he knew at the time of the assignment that the bond had been given about land which Doublehead claimed by virtue of a treaty, but that the treaty is a public law of which the corn-
 
 *288
 
 plainant was bound to take notice. The defendant also alleges that he does not know what interest Doublehead pretended to have, and that the complainant agreed to take it as a risking bargain.
 

 No proof has been made by either the complainant or the defendant; but it has been insisted that enough is admitted by the answer to entitle the complainant to relief.
 

 It seems undeniably true that the defendant can stand in no better situation than Doublehead. The bond, if negotiable, was assigned after it became due; and therefore the assignee is affected by any equity which would have affected the obligee.
 

 Again : The bond was in part payable in property; and the assignment, even if made before it became due, would not draw after it those consequences attached to negotiable papers.
 

 The question must therefore be now examined as if the suit were between the complainant and Doublehead’s representatives.
 

 The treaty was entered into on the 7th day of January, 1806. By the first article of it the Cherokees relinquish to the United States all right, title, interest, and claim, to all that tract of country which lies north of Tennessee River, and westward of a line directed, etc., excepting two described tracts, etc., “ which first reserved tract is to be considered the common property of the Cherokees who now live on the same, including John D. Chisolm,” etc.
 

 Doublehead’s name is not mentioned in the reservation, but it is presumed he was one of the Indians who lived upon it. From the words of the treaty as well as the spirit of it, it would seem that as to the excepted tract the Indian title is not extinguished, because it is appropriated by the Indians themselves to a particular part of their nation. It is certainly true that in the reservation there are no words of inheritance by ¿which to transmit the interest to the heirs of those for whom it was reserved. But to whom it is to belong after their death, whether to the whole nation or to any particular part of it, in the view which the Court have taken of the subject is perfectly unimportant.
 

 The bond was given by a citizen of the United States to an Indian, and an Indian countryman, to secure the consideration money for an interest in a tract of land, to which the Indian title was not extinguished.
 

 By the act of Congress entitled, “ an Act to regulate trade and intercourse with the Indians, and preserve peace on the frontiers,” passed in the year 1806, it is enacted, “ that no purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian, or native, or tribe of Indians, within the bounds of the United States, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution, &c.”
 

 It is conceived this section of the act of Congress operates directly on
 
 *289
 
 this contract, and renders null whatever agreement the complainant and Doublehead may have made with respect to the land.
 

 The complainant could not legally acquire any interest in the land by virtue of this agreement. In point of fact he does not appear to have derived any benefit therefrom, and the bond must be considered as one for which no consideration whatever was given.
 

 In ordinary cases if one give his bond without consideration, and at the time of giving it, expected he was receiving a consideration, he can only be relieved in equity; because a want of consideration, or the failure of the consideration cannot be inquired into at law.
 

 But in this case it has been urged that a court of equity ought not to interfere ; because by proper pleading, the complainant could have made an effectual defence at law.
 

 It appears certainly true that if a party has a plain legal remedy, and from his own negligence or default, does not avail himself of it, a court of equity ought not to hear his complaint. It has been already stated that if this were an ordinary case, the want of consideration could be inquired into alone in this Court. What then is there to confine it exclusively to an investigation at law? The counsel for the defendant answer that the jurisdiction of this Court is ousted in consequence of the act of Congress, which makes void purchases of the kind now before the Court. The answer is by no means satisfactory. The act of Congress is entirely silent as to the effect of an instrument given to secure the consideration money for a lease or conveyance of this kind. The “ purchase, lease, or conveyance,” is made void; but whether the -purchaser is to be relieved as to the consideration, and if he is, in what court, the statute gives no directions. At all events it cannot be said to be a case in which a plain defence at law could have been made ; and yet it is most obvious that the complainant is entitled to relief somewhere.
 

 It has been further urged that the treaty and act of Congress are public laws, of which the complainant must be presumed to have had knowledge ; and, therefore, he cannot be relieved. It is evident that Drew expected to derive a benefit from the contract when he entered into it; this expectation must have been raised by Doublehead, or some person in his behalf, as his name is not mentioned in the treaty; am.1 if a man is clearly under a mistake in point of law, which mistake is produced by the representation of the other party, he can be relieved, as well as if the mistake were as to a matter of fact.
 

 The injunction must be made perpetual.